**Richard J. HOSKINS, Petitioner–
Appellant,**

v.

**Daniel R. McBRIDE, Superintendent,
Respondent–Appellee.**

**No. 00–3666.**

United States Court of Appeals,
Seventh Circuit.

Submitted June 18, 2001.*

Decided June 19, 2001.

---

* After an examination of the briefs and the
record, we have concluded that oral argument is unnecessary. Thus, the appeal is

submitted on the briefs and the record. *See*
Fed. R.App. P. 34(a).

Before MANION, ROVNER, and EVANS, Circuit Judges.

## ORDER

After being found guilty of battery for throwing a substance smelling of feces and urine on two correctional officers, a conduct adjustment board ("CAB") sanctioned Indiana prisoner Richard Hoskins with the loss of 180 days of earned credit time, one year of disciplinary segregation, and a restriction on his recreation time. Hoskins now appeals the district court's denial of his petition under 28 U.S.C. § 2254 in which he claimed that the CAB denied him procedural due process during the disciplinary hearing. We affirm in part and vacate in part and remand for the district court to hold a limited evidentiary hearing.

On February 9, 1999, Hoskins received two disciplinary conduct reports charging him with throwing a liquid smelling like urine and feces from his cell at Sergeant D. Parker and Officer S. McBride. The first conduct report was written by Officer McBride and was assigned case number WVE 99-02-0022, and the second was drafted by Sergeant Parker and assigned number WVE 99-02-0060. The three-member CAB, which included CAB Chairperson Clingerman, held a hearing on the two charges on February 17, 1999. At the hearing, Hoskins contended that the officers already had a liquid substance on their faces before they ran by Hoskins's cell that Sergeant Parker had been harassing him for more than a month before the liquid-throwing incident, and that Officer McBride was not on duty at Hoskins's cell block on February 1, 1999, the day of the incident. The CAB rejected Hoskins's

version of the events and found him guilty of battery in both cases based on the conduct reports and prison staff witness statements.

Hoskins appealed the decisions administratively to the Facility Head, contending, among other thins, that CAB Chairperson Clingerman was biased during the proceedings and that the CAB denied him the opportunity at the hearing to present eyewitness statements from other inmates. Although the charge filed by Officer McBride, WVE 99-02-0022, was overturned as being duplicative of the charge filed by Sergeant Parker, WVE 99-02-0060, the Facility Head affirmed the conviction in WVE 99-02-0060, noting that "[n]o procedural errors affecting due process are noted." Hoskins's final administrative appeal on charge WVE 99-02-0060 was also affirmed. He then filed his petition under 28 U.S.C. § 2254, claiming that the CAB denied him procedural due process by refusing to consider the witness statements and that Chairperson Clingerman was biased against him. Hoskins subsequently requested leave to conduct discovery, but the district court denied that request. On September 28, 2000, the district court denied Hoskins's petition.

In this appeal, Hoskins first argues that the district court erroneously concluded that he was not denied procedural due process when the CAB refused to consider witness statements that he allegedly submitted to the board. He contends that the witness statements were relevant to his defense (and not "repetitive" as CAB Chairperson Clingerman allegedly called them) because they corroborated his claims that Officer McBride was not present at Hoskins's cell block o the day of the incident and that another prisoner threw the liquid on the guards before they ran past Hoskins's cell. In support of his ar-

gument that the witness statements were relevant, Hoskins has supplied affidavits from inmates Vincent James and Lokmar Yazid Abdul-Wadood attesting that they gave witness statements to Hoskins before the disciplinary hearing. According to James and Abdul-Wadood, these witness statements asserted that: (1) a female officer named McBride was not on duty during the incident; and (2) they saw another inmate throw the liquid on two officers before they reached Hoskins cell. The state counters that these witness statements are irrelevant to Hoskins's defense because the witness said only that a *female* officer named McBride was not on duty at the time of the incident, and the Officer McBride who filed the disciplinary report against Hoskins was male.[1] Thus, the state contends, whether a female officer named McBride was on duty neither supports nor negated the question whether Hoskins threw liquid at the male Officer McBride.

■ When a prisoner such as Hoskins is faced with the possible revocation of good-time credits, due process requires that he be allowed to call witnesses in his defense. *Whitlock v. Johnson*, 153 F.3d 380, 385 (7th Cir.1998). This right to call witnesses, however, is qualified, and does not protect the right to present witnesses whose testimony would be irrelevant or unnecessary. *Ponte v. Real*, 471 U.S. 491, 495–96, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)); *Whitlock*, 153 F.3d at 386 (same). Here, whether female Officer

McBride was present at the site of the liquid-throwing incident does not shed light on whether male Officer McBride was a victim of the attack. The witness statements relating to the female officer are therefore irrelevant to the battery charges brought against Hoskins, and the CAB's alleged exclusion of that testimony did not violate due process.

■ We note, however, that both James and Abdul–Wadood attest that in their witness statements they explained that another prisoner, not Hoskins, threw the liquid on the officers. Abdul–Wadood moreover avers that in his witness statement, he asserted that the officers had liquid on their faces before they walked up "the steps to the upper level where Mr. Hoskins was housed." (Abdul–Wadood Aff. ¶ 4). These statements, if they were submitted to the CAB, would have corroborated Hoskins's defense theory that another prisoner had thrown the liquid at the officers before they arrived in front of Hoskins's cell. We previously have noted the importance of corroborative testimony when an inmate is involved in a "swearing contest" against a prison official's version of events, *Whitlock*, 153 F.3d at 388 (citation and internal quotations omitted); *see also Graham v. Baughman*, 772 F.2d 441, 445 (8th Cir.1985) (" 'Merely corroborative' evidence is many times the most probative for it may substantiate and make credible an otherwise bald and self-serving position."), and conclude this testimony could have been corroborative and, if submitted, should have been considered.[2]

---

1. The state also contends that this court should not consider the inmate affidavits attached to Hoskins's appellate brief because he did not submit them to the district court. This argument is incorrect, however, because Hoskins attached the affidavits as exhibits to his traverse in the district court.

2. Hoskins did not argue in his administrative appeals that the witness statements should have been considered because the testimony about another prisoner throwing the liquid was both relevant to and corroborative of his defense. Nonetheless, the state has not contended that Hoskins failed to exhaust his administrative remedies with respect to this is-

But did Hoskins submit the witness statements to the CAB? Hoskins, who signed an affidavit stating that the facts alleged in his petition were true, explains that he brought the witness statements to the disciplinary hearing, that he distributed them to the CAB, and that the CAB explicitly refused to consider them yet kept the statements regardless. These specific factual averments are not refuted conclusively by the CAB's unauthenticated disciplinary hearing form, which does not indicate whether Hoskins tendered witness statements; even if the form were verified, the form at most creates an issue of fact. *See Daniels v. United States*, 54 F.3d 290, 294 (7th Cir.1995) (petitioner's detailed and specific averments not conclusively refuted by government's conflicting version of events). Because the record does not contain adequate information to resolve this factual dispute—which, if decided in Hoskins's favor, could entitle him to relief—an evidentiary hearing is necessary. *See id.*

■■■ Hoskins's petition was properly denied, however, with respect to the claim that a member of the CAB was biased. A prisoner has a right to have a disciplinary hearing conducted by an impartial decision maker. *See Withrow v. Larkin*, 421 U.S. 35, 46–47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Wolff*, 418 U.S. at 570–71, 94 S.Ct. 2963. Adjudicators enjoy a presumption of honesty and integrity, *Withrow*, 421 U.S. at 47, 95 S.Ct. 1456, and thus the constitutional standard for impermissible bias is high, *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). Hoskins asserts that CAB Chairperson Clingerman was biased against him as exhibited by Clingerman finding him guilty of eight disciplinary offenses (including the charges in this case)

during a five-week period in 1999 and by the fact that Clingerman committed procedural errors that resulted in the reversal of some of those convictions. Evidence of judicial rulings, however, rarely if ever constitutes a valid basis for a claim of partiality. *Brokaw v. Mercer County*, 235 F.3d 1000, 1025 (7th Cir.2000); *see also In re Golant*, 239 F.3d 931, 938 (7th Cir.2001) (Absent other evidence, a decision maker's bias is not present "merely because a party loses on the merits." (citation omitted)). Hoskins also asserts that Clingerman's bias is reflected in condescending remarks that Clingerman directed towards him during other disciplinary hearings. But Hoskins makes only generalized accusations that "Clingerman made various comments to taunt and ridicule him and to openly express his contempt for Hoskins and other prisoners in his housing unit." Such general "hostile feelings" are inadequate to demonstrate an unconstitutional bias. *Lavoie*, 475 U.S. at 821, 106 S.Ct. 1580. And the one specific comment that Hoskins explicitly points to—"you don't understand do you, Hoskins? Face it ... you can't win!"—is taken completely out of context.

■■■ As a final matter, Hoskins contests the district court's denial of his motion to conduct discovery. Unlike other civil proceedings, habeas corpus proceedings do not entitle a prisoner to discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997). Rather, a petitioner can obtain discovery only "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." *Id.* (quoting Rules Governing 28 U.S.C. § 2254 Cases 6(a)). To support his claim that Clingerman exhibited bias in his disci-

---

sue, and thus the state has waived reliance on procedural default. *Hernandez v. Cowan*, 200

F.3d 995, 997 (7th Cir.2000).

plinary proceedings, Hoskins requested records from all of the prison disciplinary proceedings that Clingerman conducted against him. As explained above, however, Clingerman's rulings in other proceedings do not demonstrate that Clingerman was biased in the disciplinary proceedings involved in this case. Therefore the district court did not err in denying the request.

For the foregoing reasons, we AFFIRM in part and VACATE in part and RE-MAND for an evidentiary hearing to ascertain whether Hoskins submitted to the CAB witness statements relating to the defense theory that another prisoner committed the battery on the officers.